DAVID L. WOHLGEMUTH, APPELLEE, V. R. JAMES PEARSON, DIVISION OF MOTOR VEHICLES OF THE STATE OF NEBRASKA, ET AL., APPELLANTS.

285 N. W. 2d 102

Filed November 6, 1979. No. 42140.

Paul L. Douglas, Attorney General, and Linda A. Akers, for appellants.

Earl J. Witthoff of Perry, Perry, Witthoff & Guthery, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

In this appeal from the District Court for Seward County, Nebraska, the District Court reversed the finding of the appellant, the director of the Department of Motor Vehicles, who had determined that the appellee, David L. Wohlgemuth, had failed to comply with this state's implied consent law by refusing to submit to a body fluid test when properly requested to do so. When we review the findings of the trial court de novo as in equity, Wiseman v. Sullivan, 190 Neb. 724, 211 N. W. 2d 906, we take into account that on appeal to the District Court the burden of proof is on the licensee to establish by a preponderance of the evidence the grounds for the reversal. Mackey v. Director of Department of Motor Vehicles, 194 Neb. 707, 235 N. W. 2d 394. The trial court made no specific findings as to the plaintiff's contentions. However, it is clear from a reading of the record that the arresting officer clearly had reasonable grounds to believe that plaintiff had been driving a motor vehicle while under the influence of intoxicating liquor. It is further clear that the arresting officer made a series of requests to Wohlgemuth, appellee here, and was refused either conditionally or otherwise. We have stated before that a conditional or qualified refusal is not sanctioned by the implied consent law and such refusal is a refusal to submit to tests within the meaning of the act. Preston v. Johns, 186 Neb. 14, 180 N. W. 2d 135; Rusho v. Johns, 186 Neb. 131, 181 N. W. 2d 448.

The sole and only issue raised in the trial court to

which appellant addresses himself is whether, within the meaning of section 39-669.10, R. R. S. 1943, the appellee was a person who was otherwise "in a condition rendering him incapable of refusal." It was and remains the position of the State that Wohlgemuth was at all times conscious and capable of refusal. It will be necessary to set forth the facts of this case.

The evidence before the trial court shows that on April 24, 1977, at about 7:15 p.m., the state patrol was summoned to the scene of a one-vehicle accident on a gravel road near Seward. When the trooper arrived, he observed David Wohlgemuth lying on his back next to the left rear wheel of the pickup involved. In bending over Wohlgemuth, who was conscious, the trooper saw numerous abrasions and cuts, a large gouge in his right leg, and his left arm appeared to be broken. He also detected a strong odor of alcohol about his breath. He observed that his eyes were bloodshot and that his pupils appeared to be dilated. Around and inside the vehicle were numerous beer cans and bottles, and one can appeared to contain liquid and was cold to the touch. Wohlgemuth testified he did not recall anything from the time of the accident until the next day, including any request that he submit to a chemical test. Witnesses, including family members, described him at the accident scene and later at the hospital as conscious but not responsive to questions, disoriented, and not able to carry on a conversation. The treating physician testified by deposition that Wohlgemuth sustained a cerebral concussion, that he was in a semistuporous condition, though always conscious, and that he repeated questions directed to him over and over.

At the direction of the arresting trooper, another trooper followed Wohlgemuth to the hospital emergency room and obtained permission from the physician to talk to Wohlgemuth. The implied consent advisory form was read to Wohlgemuth and he was

requested to submit to a urine or blood test. Wohlgemuth responded that he was not taking any tests, that he wanted his wife present. The request was repeated and the only response received was that Wohlgemuth wished his wife present, with the exception of at least one occasion when no response was given. The arresting trooper arrived at the hospital and was told of Wohlgemuth's previous responses. He went to Wohlgemuth and again asked if he would submit to a test. The trooper stated: "At this time, he responded with a large amount of obsenities [sic] to myself and said that he was not going to take any tests until his wife was present." The trooper testified that Wohlgemuth appeared hostile but that his responses were rational. The doctor further verified that the officers requested Wohlgemuth to submit to a blood alcohol test in his presence at least three times while in the emergency room, during a period of about a half hour, and each time Wohlgemuth refused. The physician testified by deposition: "* * * it was my opinion at that time — it has not changed — that he [Wohlgemuth] did not have the presence of mind at that time to make a valid judgment as to the proper course of action in view of the fact of his injuries — and particularly, the contusions and abrasions about his head and face — he would seem, to me, to have symptoms and signs consistent with a cerebral contusion. Q Would you say he, in his state at that time, in his mental state, he understood the questions? A Well, I really couldn't say. I don't think I could really answer that. Q Would you say that he was mentally incompetent at that time? A Yes, I think so."

The State urges us to adopt the rule in State v. Hurbean, 23 Ohio App. 2d 119, 261 N. E. 2d 290: "All the understanding requisite to a refusal to take the test is an understanding that one has been asked to take a test. One who does not understand he has been asked to take a test cannot, of course, be said

to have refused to take a test. Whether one who has been asked to take a test has understood that such a request has been made is a question of fact to be determined by the court from all the evidence. In this case it was admitted. This evidence may include the licensee's claim that he did not understand the advice as to the consequences of the refusal to take the test. But an understanding of the consequences of the refusal to take the test is not an element of understanding that a request to take the test has been made, nor a precondition of refusal."

The appellant points out that it has long been the rule in other jurisdictions that a person is not exempted from the provisions of a refusal statute merely because he was too intoxicated to appreciate the consequences of his refusal. Perryman v. Florida, 242 So. 2d 762 (Fla. App., 1971).

The court in Campbell v. Superior Court, 106 Ariz. 542, 479 P. 2d 685, stated: "It is the opinion of this court that a refusal to submit to the test occurs where the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the test."

In this essentially civil proceeding, any other result would force the director and the trial court into a psychological guessing game as to the appellee's state of mind and his degree of capability of comprehension. We do not suggest that both the director and the trial court, on review, should not examine whether the suspect was capable of understanding that he was asked a question. If the suspect knew that he was being asked a question and manifested a refusal, he was for the purpose of the statute, refusing to take a test.

The evidence is overwhelming that the appellee understood he was requested to take the test and did, in fact, articulate a refusal. Therefore, the

judgment of the trial court that the appellee was mentally "incapable of refusal" does not satisfy the terms of the statute and does not constitute a defense to the action of the director in suspending his license.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissenting.

I think it is fundamentally unsound, generally, to impose penalties or sanctions upon the basis of declarations or statements made while the declarant was mentally incompetent. The undisputed medical evidence in this case shows that Wohlgemuth was mentally incompetent because of a cerebral contusion, not voluntary intoxication, at the time the alleged refusals were made.