MICHAEL EUGENE HOYLE, APPELLANT, V. HARRY "PETE" PETERSON, DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES, STATE OF NEBRASKA, ET AL., APPELLEES.

343 N.W.2d 730

Filed January 27, 1984. No. 82-656.

Robert L. Anderson, for appellant.

Paul L. Douglas, Attorney General, and Ruth Anne E. Galter, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Michael Eugene Hoyle appeals the judgment of the district court for Lancaster County, Nebraska, affirming an order of Harry "Pete" Peterson, director of the Department of Motor Vehicles, State of Nebraska, namely, revocation of Hoyle's Nebraska operator's license and operating privileges for 6 months on account of Hoyle's refusal to submit to a test authorized by Nebraska's implied consent law, Neb. Rev. Stat. §§ 39-669.08 et seq. (Reissue 1978). We affirm.

Hoyle's driving his car erratically at a high rate of speed on a Lincoln street attracted the attention of Officer R. S. Kubicek of the Lincoln Police Department shortly after 2 a.m. on April 30, 1981. After Hoyle "failed" a preliminary breath test administered at the scene, Kubicek arrested Hoyle at 2:24 a.m. and transported him to the city-county jail in Lincoln.

At 2:35 a.m. in the jail Kubicek read to Hoyle an "implied consent advisement post arrest" form. Hoyle also read the form, said he understood the form and had no questions, but refused to sign that form as the "person advised." Around 3 a.m., at the request of Hoyle, Kubicek placed a call to Hoyle's attorney. In that telephone call Kubicek gave Hoyle's full name to the attorney. Hoyle testified that the attorney "just told me not to take the test." The attorney had previously represented Hoyle's brother. In giving the advice not to take the test, the attorney believed that he was talking to Hoyle's brother. After the telephone conference involving Hoyle's attorney, Kubicek asked Hoyle to

take a breath test. Based on the advice given by his attorney during the telephone call, Hoyle refused to take the test. Realizing the mistaken identity of his caller, the attorney telephoned Kubicek some 7 minutes after the initial call, i.e., around 3:07 a.m. The attorney testified that Kubicek said "it was too late" for the test because the officer had "turned the machine off already."

The director of the Department of Motor Vehicles found that Hoyle's refusal to submit to the test was not reasonable, and revoked Hoyle's operator's license and operating privileges. This revocation was affirmed by the district court.

The long-range objective of the implied consent law is reduction of carnage caused through operation of motor vehicles by drivers with impaired ability as a result of drinking alcohol, an intoxicating and dangerous drug. The effect will be protection of the public and not merely punishment of the offending driver. The more immediate purpose of the implied consent law is the test authorized to provide evidence of the alcohol contained in the blood of one arrested for driving while under the influence of alcoholic liquor. See Neb. Rev. Stat. § 39-669.07 (Reissue 1978). In this manner the implied consent law supplies a means to obtain evidence of a driver's intoxication or sobriety, as well as a system for detecting the drunken driver. See, *Ziemba v. Johns*, 183 Neb. 644, 163 N.W.2d 780 (1968); *Peterson v. State*, 261 N.W.2d 405 (S.D. 1977); *Currier v. Motor Vehicles*, 20 Wash. App. 16, 578 P.2d 1325 (1978); *Krueger v. Fulton*, 169 N.W.2d 875 (Iowa 1969); *People v. Shorkey*, 23 Ill. App. 3d 662, 321 N.E.2d 46 (1974); cf. *Zidell v. Bright*, 264 Cal. App. 2d 867, 71 Cal. Rptr. 111 (1968).

If a driver's refusal to submit to a test authorized by law is reasonable under the circumstances, there can be no revocation of the driver's license and operating privilege. See § 39-669.16. See, also, *Martinez v. Peterson*, 212 Neb. 168, 322 N.W.2d 386

(1982); *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906 (1973). On the other hand, if the refusal to submit to the test is not reasonable, revocation of the driver's license and operating privilege is a consequence of such refusal. See, §§ 39-669.15 and 39-669.16; *Stevenson v. Sullivan*, 190 Neb. 295, 207 N.W.2d 680 (1973); cf. *Wiseman v. Sullivan, supra.* Justifiable refusal of the test depends upon some illegal or unreasonable aspect in the nature of the request, the test itself, or both.

In a driver's course through the implied consent law, there comes a "point of no return." After a reasonable opportunity to make a decision has been afforded a motorist, a decision simply has to be made. Will the motorist submit to the test, "Yes" or "No"? See *People v. Shorkey, supra.* In the oft-cited case of *State v. Pandoli*, 109 N.J. Super. 1, 4, 262 A.2d 41, 42 (1970), there is the following: "Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. [Citation omitted.] The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request." As a corollary to *Pandoli*, a motorist is not required to execute mental gymnastics in order to respond to an officer's proper request for the test.

Nebraska law does not recognize any conditional or qualified refusal to take a test authorized by the implied consent law. See *Winter v. Peterson*, 208 Neb. 785, 305 N.W.2d 803 (1981). "A refusal to submit to a chemical test occurs within the meaning of the implied consent law when the licensee, after being asked to submit to a test, so conducts himself as to justify a reasonable person in the requesting offi-

cer's position in believing that the licensee understood that he was asked to submit to a test and manifested an unwillingness to take it." *Martinez v. Peterson, supra* at 171, 322 N.W.2d at 388. To constitute a refusal it is only required that a driver understand that he has been asked to take a test and that such driver has manifested an unwillingness to take the requested test. See, *Wohlgemuth v. Pearson*, 204 Neb. 687, 285 N.W.2d 102 (1979); *Winter v. Peterson, supra; Martinez v. Peterson, supra*. Nothing in the record indicates that Hoyle did not understand that he was requested to take a test authorized by the implied consent law. After the officer read the implied consent form to Hoyle, Hoyle himself read the form and had no question about it.

The issue in this case is whether a motorist's subsequent offer to take a test to determine alcoholic content of blood cures or nullifies an earlier refusal to submit to the test requested by the arresting officer.

A driver who has been arrested for operating a motor vehicle upon a public street or highway while under the influence of intoxicating liquor is not entitled to have a lawyer present during administration of a test authorized under the Nebraska implied consent law. See *Wiseman v. Sullivan, supra*. A refusal to grant a motorist's request to contact an attorney before consenting to a test under the Nebraska implied consent law affords no reasonable ground for refusing to submit to the test. See, *Rusho v. Johns*, 186 Neb. 131, 181 N.W.2d 448 (1970); *Stevenson v. Sullivan, supra*. A driver is not entitled to consult with a lawyer before taking a test, nor is the test required to be delayed by a driver's request that he be permitted to contact a lawyer concerning the test requested by the arresting officer. See *Winter v. Peterson, supra*.

In *Heffernan v. Kissack*, 192 Neb. 637, 638, 223 N.W.2d 486, 487 (1974), we held: "A single request to submit to a test is sufficient. There is no require-

ment that a second request be made if the person arrested refuses to submit to the test." See, also, *Winter v. Peterson, supra.* If consultation with an attorney before a driver's decision whether to take the test is irrelevant to the question of reasonable refusal, the quality or accuracy of an attorney's advice given before a driver's refusal is equally irrelevant to that question.

There is nothing in § 39-669.15 (refusal to submit to the test) which implies additional time for reflection or reconsideration after a driver's refusal to take the test. In fact, the statute indicates to the contrary, viz, "*If* a person arrested pursuant to section 39-669.08 refuses to submit to the chemical test of blood, breath, or urine required by that section, *the test shall not be given* . . . ." (Emphasis supplied.) There are several factors militating against the argument for additional time to allow a driver's subsequent offer to take the test. As time elapses between arrest and the test, the reliability and accuracy of the test diminishes. See, *Peterson v. State,* 261 N.W.2d 405 (S.D. 1977); *Harlan v. State,* 113 N.H. 194, 308 A.2d 856 (1973). The time element may require involvement of an expert to extrapolate information derived from a delayed test. See *Peterson v. State, supra.* This tends to unnecessarily compound or complicate matters of evidence. Also, permitting a delayed test at the subsequent offer of the motorist would require officers to wait and see if there was a change of mind by the refusing motorist, and would require officers to forego other responsibilities in order to arrange the belated test—all contrary to the clear intent behind the implied consent law that the test be submitted and completed expeditiously. See, *Peterson v. State, supra*; *Krueger v. Fulton,* 169 N.W.2d 875 (Iowa 1969); *People v. Shorkey,* 23 Ill. App. 3d 662, 321 N.E.2d 46 (1974); *Zidell v. Bright,* 264 Cal. App. 2d 867, 71 Cal. Rptr. 111 (1968); *Currier v. Motor Vehicles,* 20 Wash. App. 16, 578 P.2d 1325 (1978); *State v. Palmer,* 291 Minn.

302, 191 N.W.2d 188 (1971). By the clear weight of the authority presented to us, and we so hold, a motorist's subsequent offer to take the blood alcohol test previously refused does not nullify or cure such driver's initial refusal to take the test requested by the arresting officer. We believe that to be the proper rule. Any other interpretation would serve only to frustrate the implied consent law.

We must affirm the judgment of the district court in view of what has been done according to Hoyle.

AFFIRMED.

WHITE, J., dissenting.

I agree that this court in *Winter v. Peterson*, 208 Neb. 785, 787, 305 N.W.2d 803, 806 (1981), directly held that "[a] single request to submit to a test is sufficient. There is no requirement that a second request be made if the person arrested refuses to submit to the test." I am convinced that this is too harsh a result.

The Supreme Court of Hawaii in *State v. Moore*, 62 Hawaii 301, 307, 614 P.2d 931, 935 (1980), observed: "It is true that many courts have held that there is a binding 'refusal to submit' where a motorist is offered a chemical test and at first refuses or delays in consenting but subsequently changes his mind and requests a test. [Citations omitted.] We, however, decline to hold with a rule of law which would rigidly and unreasonably bind an arrested person to his first words spoken, no matter how quickly and under what circumstances those words are withdrawn. We consider the better rule to be one which takes into consideration the fairness to all parties of permitting an arrested person later to change his mind." The Hawaii court then quoted at 307-08, 614 P.2d at 935, the North Dakota Supreme Court in *Lund v. Hjelle*, 224 N.W.2d 552 (N.D. 1974): " 'Since the accuracy of a chemical test under [the Implied Consent Law] does not depend upon its being administered immediately after an arrest, accident or other event, and thus a delay for a reasonable period of time while an arrested person considers or reconsiders a

decision whether or not to submit to a chemical test will not frustrate the object of the Legislature in enacting [the Implied Consent Law], we hold that where, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and later changes his mind and requests a chemical blood test, the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.' ''

The Hawaii court concluded at 308, 614 P.2d at 935: ''We adopt the criteria of the North Dakota Supreme Court. We hold that unless a delay would materially affect the test results or prove substantially inconvenient to administer, a subsequent consent may cure a prior refusal to be tested.''

A total of 7 minutes elapsed between the first refusal and the change of mind. That first mistaken refusal produces for the appellant here disastrous consequences, subjecting him not only to the underlying charge, if meritorious, but to an additional charge of refusing to submit to a chemical test. We think this is both on its face patently unfair and unreasonable. The majority cites in support of this position the case of *Wohlgemuth v. Pearson*, 204 Neb. 687, 285 N.W.2d 102 (1979). The facts of the case are distinguishable here. In *Wohlgemuth* the only question was not whether there was a manifestation of an intent to refuse, but whether or not the defendant

was, in fact, capable of making a refusal at all. See the dissent of Boslaugh, J., at 692.

As there was no harm to the state's position by allowing the defendant to change his mind and to take the test within a reasonable period after the first refusal, I would reverse the decision of the trial court.

BOSLAUGH, J., joins in this dissent.