RICHARD A. JAMROS, APPELLEE, V. HOLLY JENSEN, DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES, STATE OF NEBRASKA, APPELLANT.

377 N.W.2d 119

Filed December 6, 1985.   No. 85-358.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellant.

W.A. Stewart, Jr., of Stewart & Smith, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The director of the Department of Motor Vehicles appeals from an order setting aside her order which revoked the motor vehicle operator's license of Richard A. Jamros under the Nebraska implied consent law.

Jamros was arrested in Lexington, Nebraska, at approximately 12:39 a.m. on June 26, 1983, for driving while under the influence of intoxicating liquor. The arresting officer, Diane LeDroit Reiber, testified that she initially observed Jamros asleep in the driver's seat of his car with the motor running. The car was parked next to the curb on a street in front of a residence. Reiber awakened Jamros and observed that his eyes were bloodshot and watery and that he had an odor of alcoholic beverage about him. She also observed that Jamros' speech was slurred and that his balance was unsteady. Jamros was placed under arrest after failing two field sobriety tests.

As Officer Reiber escorted him to her patrol car, Jamros lit a cigarette. Reiber advised Jamros to extinguish the cigarette and

to refrain from smoking or putting anything in his mouth until she had completed all the tests. Jamros continued to smoke, but on a second advisement extinguished the cigarette. Jamros had not been asked to submit to a chemical test at this time.

Jamros was taken to the Lexington police station, where he was placed in a squad room containing an Intoxilyzer. In the squad room Jamros lit another cigarette. Again he was advised not to smoke or put anything in his mouth until a breath test was obtained. Jamros responded that he was not going to take a test. Officer Reiber then read an implied consent form to Jamros, stating the penalties for refusing to submit to a chemical test. Jamros appeared to understand the advisement. He was then asked to submit to a breath test. After signing the implied consent advisement, Jamros never stated that he would not take the test.

After verifying the maintenance and calibration of the Intoxilyzer, Officer Reiber initiated a 15-minute observation period of Jamros, as required by the Department of Health rules. Approximately 13 minutes into this observation period, Jamros took a Rolaids out of his pocket and placed it into his mouth. Both Officer Reiber and Officer Bill Engler, who was present as a witness to the testing, advised Jamros not to take the tablet as he moved it toward his mouth. Jamros responded to the effect that "you're damn right I'm going to, because I've got an ulcer." After he swallowed the tablet, Jamros was advised that he would be cited for a refusal and was released. The record does not show that Jamros was ever specifically advised that putting anything into his mouth would constitute a refusal to submit.

Jamros testified that he took the Rolaids because of an ulcer problem which was causing him extreme stomach pain and which could only be relieved by taking an antacid. According to Jamros, without the antacid he would not have been physically able to perform the breath test. The pain and the contraction of his stomach muscles would have prevented him from being able to exhale sufficiently into the machine.

Officer Reiber did not recall Jamros' having any difficulty breathing that night, nor did she inquire if Jamros was ill or taking medication.

The district court found that there was no evidence that the Rolaids would have affected the test nor that Jamros was unwilling to take the test then or wait another 15 minutes, and reversed the revocation order. The court also found that Jamros' action in taking the Rolaids was not unreasonable, given his physical discomfort, and that the officer's suspension of the test was unreasonable. The trial court concluded that Jamros' act did not constitute a refusal.

The director contends that the district court erred in finding that Jamros did not refuse to submit to a chemical test of his breath.

On an appeal from an order revoking a motor vehicle operator's license under the implied consent law, the findings of the trial court are reviewed de novo as in equity. *Wohlgemuth v. Pearson*, 204 Neb. 687, 285 N.W.2d 102 (1979); *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906 (1973). On appeal to the district court the burden of proof is on the licensee to establish by a preponderance of the evidence the grounds for reversal. *Bapat v. Jensen*, 220 Neb. 763, 371 N.W.2d 742 (1985); *Wohlgemuth v. Pearson, supra.*

We have held that a refusal to submit to a chemical test for purposes of the implied consent law occurs "when the licensee, after being asked to submit to a test, so conducts himself as to justify a reasonable person in the requesting officer's position in believing that the licensee understood that he was asked to submit to a test and manifested an unwillingness to take it." *Martinez v. Peterson*, 212 Neb. 168, 171, 322 N.W.2d 386, 388 (1982). See, also, *Wohlgemuth v. Pearson, supra*; *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730 (1984).

In the present case the uncontradicted evidence is that Jamros understood that he had been asked to submit to a breath test and he had expressly consented to the test. The issue is whether he manifested an unwillingness to take the test by ingesting the Rolaids tablet.

A motorist's conduct may constitute a refusal for purposes of an implied consent statute. S. Brent & S. Stiller, Handling Drunk Driving Cases § 15:6 (1985). The conduct in the present case did not amount to a refusal in light of Jamros' express consent to take the test, unless the ingestion of the Rolaids

exhibited an objective unwillingness to submit to the test.

In other jurisdictions a motorist's refusal to refrain from chewing gum, eating, or smoking may constitute a refusal to submit to a chemical test. But a theme common among such cases is the idea that such conduct amounts to a refusal because the motorist was expressly forewarned that it would amount to a refusal. See, *Matter of Dykeman v Foschio*, 90 A.D.2d 892, 456 N.Y.S.2d 514 (1982); *Mathie v. Schwendiman*, 656 P.2d 463 (Utah 1982); *Matter of Sullivan v Melton*, 71 A.D.2d 797, 419 N.Y.S.2d 343 (1979); *Com., Dept. of Transp. v. Mumma*, 79 Pa. Commw. 108, 468 A.2d 891 (1983). There was no such warning in the present case. The lack of an express warning detracts from the argument that Jamros' ingestion of the Rolaids was a refusal to take the test.

Jamros was not given an opportunity to give a breath sample after ingesting the Rolaids. It was not only Jamros' conduct which prevented the acquisition of a breath sample. The State is entitled to have a chemical test administered at a time when it will be effective to disclose blood alcohol content in relation to the time when the vehicle was operated, but there is no evidence here that the State would have been prejudiced by initiating another 15-minute observation period followed by administration of the breath test. See *Sedlacek v. Pearson*, 204 Neb. 625, 284 N.W.2d 556 (1979). In *Sedlacek, supra*, we held that a delay in chemical testing is not prejudicial unless it materially affects the results of the test. The evidence in the present case does not show that the test results would have been so affected. It is of some significance that the observation period was terminated at 1:03 a.m., just 20 minutes after Jamros had signed the implied consent advisement.

The director also contends that Jamros expressly refused to submit to a test when he stated, prior to being read an implied consent advisement, that he would not take a test. A refusal prior to the advisement is not relevant, since the statute requires an advisement. Neb. Rev. Stat. § 39-669.08(5) (Reissue 1984). The elements in an implied consent case include reasonable grounds to believe the motorist (1) was guilty of driving while under the influence of intoxicating liquor, (2) was arrested on that charge, (3) was thereafter informed of the implied consent

law, (4) was requested to submit to a chemical test for blood alcohol content, and (5) refused to do so. *Doran v. Johns*, 186 Neb. 321, 182 N.W.2d 900 (1971). The evidence is undisputed that Jamros had not been asked to submit to a breath test when he made the statement that he was not going to take a test. As such, his statement could not constitute a refusal.

Under the Nebraska implied consent law there can be no revocation of the driver's license and operating privileges if the refusal to submit to a chemical test is reasonable under the circumstances. See, Neb. Rev. Stat. § 39-669.16 (Reissue 1984); *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730 (1984). A motorist's justifiable refusal to submit "depends upon some illegal or unreasonable aspect in the nature of the request, the test itself, or both." *Id*. at 256, 343 N.W.2d at 733. The trial court specifically found that Jamros' ingestion of the Rolaids was not unreasonable and that termination of the test at that point was unreasonable.

At trial Jamros testified that without the Rolaids, the pain he was experiencing from ulcers would have prevented him from exhaling enough breath to activate the Intoxilyzer. He testified that the basis for his belief that he could not activate the machine with the pain he was experiencing stemmed from experience with Breathalyzer tests in his employment and at conventions. When Jamros began to move the Rolaids toward his mouth and was warned not to do so, he informed the officers that he was going to take the medication because of the pain.

Several other jurisdictions have recognized that physical inability to perform a breath test may excuse conduct which might otherwise be treated as a refusal. See, *Newman v. Stinson*, 489 S.W.2d 826 (Ky. 1972) (refusal where insufficient sample given, in the absence of a showing of the impossibility of compliance or the likelihood of harm resulting therefrom); *Woolman v. Dep't of Motor Vehicles*, 15 Wash. App. 115, 547 P.2d 293 (1976) (failure to give adequate breath sample is a refusal where motorist presents no evidence excusing her inability to comply); *Pfeffer v. Dept. of Public Safety*, 136 Ga. App. 448, 221 S.E.2d 658 (1975) (sore throat or swollen glands which might cause pain, but not prevent motorist from being

able to give adequate breath sample, not the type of inability excusing compliance).

The only evidence concerning Officer Reiber's observations of Jamros' health was that she did not notice that he was having any difficulty breathing and that he complained about heartburn when he ingested the Rolaids. At no time, including when Jamros made the statement regarding his ulcer, did Officer Reiber ask him if he was sick or ill.

In *State v. Morse*, 211 Neb. 448, 318 N.W.2d 893 (1982), the defendant claimed that he was unable to activate the Intoxilyzer due to stuffed-up nasal passages. In reviewing the evidence we noted that the question of whether the defendant was unable to activate the machine was one of fact to be resolved by the trial court.

Although we review the evidence de novo in appeals from administrative revocations under the implied consent law, where there is a conflict in the evidence, we give great weight to the fact "that the trial court had the opportunity to see, hear, and observe the witnesses and the presentation of evidence firsthand in deciding which body of evidence deserved the greater credibility." *Bauer v. Peterson*, 212 Neb. 174, 177, 322 N.W.2d 389, 392 (1982). See, also, *Martinez v. Peterson*, 212 Neb. 168, 322 N.W.2d 386 (1982); *Zadina v. Weedlun*, 187 Neb. 361, 190 N.W.2d 857 (1971).

In the present case the trial court found that Jamros was in pain and, therefore, did not act unreasonably in taking the Rolaids. If Jamros' pain was as severe as the trial court apparently found it to be, Jamros did not act unreasonably in taking the Rolaids tablet, his opportunity to submit to a chemical test was unreasonably terminated, and his conduct did not constitute a refusal.

The judgment of the district court is affirmed.

AFFIRMED.

HASTINGS, J., concurs in the result.