DEAN A. JENSEN, APPELLANT, V. HOLLY JENSEN, DIRECTOR OF THE
DEPARTMENT OF MOTOR VEHICLES, STATE OF NEBRASKA,
APPELLEE.

382 N.W.2d 9

Filed February 21, 1986. No. 84-939.

Michael J. Lehan and William G. Latka, for appellant.

Robert M. Spire, Attorney General, and Michele M. Wheeler, Special Assistant Attorney General, for appellee.

BOSLAUGH, HASTINGS, CAPORALE, and GRANT, JJ., and BRODKEY, J., Retired.

BOSLAUGH, J.

The plaintiff, Dean A. Jensen, has appealed from the order of the district court affirming the order of the director of the Department of Motor Vehicles revoking his motor vehicle operator's license for refusing to submit to a chemical test of his blood, breath, or urine as required by the Nebraska implied consent law. Neb. Rev. Stat. § 39-669.08 (Reissue 1984).

The evidence at trial shows that on March 7, 1984, a truck operated by the plaintiff was involved in a collision with a van and a police cruiser. The accident occurred around 11 p.m. and was the result of the plaintiff's losing control of his pickup truck on an exit ramp on the Kennedy Expressway in Omaha, Nebraska. The plaintiff testified that his truck hit a patch of ice,

which caused it to career into the van. The impact resulted in the plaintiff's being thrown against the passenger window of the truck. He testified he has little recall of events following the accident.

An Omaha police officer, Fredrick Pfeffer, testified that he contacted the plaintiff between 11 and 11:30 p.m. after being called to the scene of the accident to transport and test a possible drunk driver. Following the administration of a field breath test by another officer, Officer Pfeffer took the plaintiff to the downtown police station.

At the station the plaintiff signed an implied · consent advisement form but refused to submit to a breath test and requested an opportunity to speak to his attorney. Officer Pfeffer allowed the plaintiff 15 minutes and two or three phone calls to contact his attorney. When Officer Pfeffer again asked the plaintiff to submit to the test, the plaintiff responded with threats. The plaintiff appeared to understand that he had been requested to submit to a test. After three or four requests the plaintiff still refused to submit to the test.

In response to questioning about the plaintiff's physical condition, Officer Pfeffer testified that Jensen was talkative, had bloodshot eyes but no visible injuries, and was fully conscious and responsive to questions. The plaintiff told the officer that he had been in a fight in Lincoln or Grand Island the night before, and attempted to exhibit bite marks on his stomach and legs. The plaintiff complained of no other injuries and made no request to be taken to a hospital.

Officer Pfeffer, who was confused by the plaintiff's statements, then contacted the officers at the scene of the accident to determine exactly what had happened.

Officer Richard Liddick, who made the investigation at the scene of the accident, testified that he observed no injuries to the plaintiff either at the scene or at the station. He detected a moderate odor of alcohol about the plaintiff and noted that the plaintiff's eyes were bloodshot and glassy. He testified further that the plaintiff made no requests for transportation to a hospital and was fully conscious when contacted for questioning in the early morning hours following the accident.

The plaintiff's wife, Ruby Jensen, testified that she saw the

plaintiff at the scene of the accident after being called there by a friend. She testified that she saw the plaintiff while he was seated in the back of a police cruiser and that he appeared to be drifting in and out of consciousness. She also testified that he had blood on his clothing and was holding his left arm. These observations were made through the window of the police cruiser, which she was not allowed to enter. Ruby Jensen also noted that the plaintiff was assisted to the main desk at the police station when she arrived to take him home. After taking the plaintiff home with the help of a friend, she discovered four glass-filled wounds in the plaintiff's scalp. She said that at this point she had difficulty keeping the plaintiff awake. Due to icy street conditions, she decided against taking the plaintiff to the hospital that evening because she could not get him to the car without assistance. She did, however, take photographs of the claimed injuries to his face and arm, which were received in evidence.

The plaintiff was taken to the hospital the following day. A report by the treating physician, which was received into evidence, indicated that the plaintiff had suffered a fractured left wrist, various contusions, abrasions, and muscle strain. The plaintiff testified that several weeks after the accident he was diagnosed as having a shattered disk in his neck.

The plaintiff and Ruby Jensen testified that the right side of the truck sustained considerable damage and that the interior of the truck contained bloodstains.

The plaintiff testified that he had no memory of being given a breath test at the scene of the accident, the receipt of an implied consent advisement at the station, nor a conversation with Officer Pfeffer about the fight which resulted in a bite wound to his stomach. The weekend before, the plaintiff had interceded in a husband-wife dispute which had resulted in such an injury. The plaintiff did testify, however, to recalling his request to speak with his attorney and admitted to having consumed five to six drinks in the hour to hour and a half preceding the accident.

The plaintiff makes three assignments of error on appeal: (1) That the trial court erred in failing to find that the plaintiff was incapable of refusing to submit to a chemical test; (2) That the

trial court erred in not ruling that the State should have taken a chemical test from the plaintiff; and (3) That the trial court erred in not sustaining the plaintiff's motion for new trial. The third assignment of error has not been briefed and is a general assignment and will not be considered on appeal. Neb. Ct. R. 9D(1)d (rev. 1983).

The first two assignments of error amount to a contention that the plaintiff was incapable of refusing to submit to a chemical test on the date in question due to injuries sustained in the collision.

The findings of the trial court in an appeal from an order revoking a motor vehicle operator's license under the implied consent law are reviewed de novo as in equity. *Jamros v. Jensen,* 221 Neb. 426, 377 N.W.2d 119 (1985). On appeal to the district court, it is the licensee's burden to establish grounds for reversal by a preponderance of the evidence. *Jamros v. Jensen, supra.*

Neb. Rev. Stat. § 39-669.10 (Reissue 1984) provides: "Any person who is unconscious or who is otherwise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the consent provided by section 39-669.08 and the test may be given."

The evidence in this case regarding the plaintiff's injuries and mental capacity following the collision, at best, is in conflict. While our review is de novo, where there are conflicts in the evidence, we attach great weight to the fact that the trial court saw, heard, and observed the witnesses. *Jamros v. Jensen, supra*; *Bauer v. Peterson,* 212 Neb. 174, 322 N.W.2d 389 (1982).

In *Wohlgemuth v. Pearson,* 204 Neb. 687, 691, 285 N.W.2d 102, 104 (1979), this court, in addressing the issue of whether the appellee was incapable of a refusal within the meaning of § 39-669.10, stated: " '[A] refusal to submit to the test occurs where the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the test.' " (Quoting *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971).) Our conclusion in *Wohlgemuth, supra* at 691, 285 N.W.2d at 104, was based on the fact that "any other result

would force the director and the trial court into a psychological guessing game as to the appellee's state of mind and his degree of capability of comprehension." In sum, we determined that if the motorist understood that he was being asked a question and manifested a refusal, he was refusing to take the test. *Wohlgemuth, supra.*

The testimony of the investigating officers indicates that, in their view, the plaintiff was capable of refusing the test and *did* in fact do so. The evidence, although conflicting as to the visibility of the plaintiff's injuries, does not indicate that the officers were unreasonable in so concluding. In their contacts with the plaintiff, he appeared to be fully conscious, he was responsive and coherent, he complained of no injuries other than the bite mark, and he did not request to be taken to a hospital.

When initially requested to submit to the Breathalyzer test, the plaintiff told Officer Pfeffer, "No, I'm not going to take the test." This occurred immediately after the plaintiff had signed the implied consent advisement form which had been read to him by the officer. This express refusal was followed by the plaintiff's request to speak to an attorney. The plaintiff was then given the opportunity to contact his lawyer, which he attempted to do. After 10 or 15 minutes the plaintiff again refused to take the test and instead responded with threats to Officer Pfeffer. The officer testified that the plaintiff appeared to understand that he had been asked to take the test.

In his brief the plaintiff contends that in addition to his broken wrist, cuts, scrapes, and bruises, he suffered a concussion as a result of the accident. The record does not support that statement, as the plaintiff's conclusory statement to that effect was stricken from the record, and the treating physician's report does not mention a concussion. The plaintiff admitted that he had five to six drinks in the hour and a half preceding the accident. From our review of the record, his intoxication is as plausible an explanation for his impaired judgment and memory regarding the circumstances of the refusal as his alleged injuries.

We have previously acknowledged the long-standing rule in other jurisdictions that "a person is not exempted from the

provisions of a refusal statute merely because he was too intoxicated to appreciate the consequences of his refusal." *Wohlgemuth, supra* at 691, 285 N.W.2d at 104.

The record does not show by a preponderance of the evidence that the plaintiff failed to understand the request to submit to a chemical test or that he was "incapable of refusal" within the meaning of § 39-669.10. His express refusal to submit to the test was not reasonable.

There being no error, the judgment of the district court is affirmed.

AFFIRMED.