KENNETH M. CLONTZ III, APPELLANT, V. HOLLY JENSEN,
DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES, STATE OF
NEBRASKA, APPELLEE.

416 N.W.2d 577

Filed December 18, 1987.    No. 86-398.

Eric W. Kruger of Bradford & Coenen, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The plaintiff, Kenneth M. Clontz III, has appealed from the order of the trial court affirming the order of the director of the Department of Motor Vehicles revoking the operator's license

and operating privileges of the plaintiff under the implied consent law. Neb. Rev. Stat. § 39-669.08 (Reissue 1984).

The record shows that late in the evening of July 17, 1985, the plaintiff was the driver of a vehicle involved in a one-car personal injury accident. The plaintiff testified that he crossed over two lanes into a left-hand turn lane, failed to stop, and hit a guardrail. Nebraska State Patrolman John M. Bral was dispatched to the accident scene. Upon his arrival he saw the plaintiff sitting on the ground, receiving treatment from paramedics. The plaintiff had suffered minor head injuries, but did not appear to be seriously injured. Bral observed that the plaintiff's eyes were bloodshot and watery, and he detected an odor of alcohol. The plaintiff's speech was slurred, and he appeared to be somewhat disoriented. The plaintiff stated that he had been drinking at the Bay Hills golf course prior to the accident. Both the plaintiff and his passenger were taken to Midlands Community Hospital.

Bral contacted Patrolman Lloyd L. Peters and requested that he administer a chemical test to the plaintiff. Peters' initial contact with the plaintiff was at around 12:15 a.m. At that time he detected a strong odor of alcohol on the plaintiff's breath and that the plaintiff had bloodshot, watery eyes. Peters explained that his purpose was to request a chemical test. Peters then read the "Implied Consent Advisement Post Arrest" form to the plaintiff. The advisement form specifically provides that "if you refuse to submit to this test, the law provides you shall be guilty of an offense . . . ." It further states that

> if you refuse this test, I am required to make a sworn report of the circumstances and the refusal to the Director of Motor Vehicles, and the Director is required to schedule a hearing at which time you must show that your refusal to submit to a test was reasonable.

Peters asked the plaintiff to sign the form. The plaintiff handed the form back to Peters and stated that he wanted to consult an attorney before signing the form or submitting to a test.

The plaintiff testified that he did not understand what he was being asked to do and that he told Peters he would not do anything until he contacted an attorney. Peters explained that

the plaintiff was not being asked any incriminating questions and that the plaintiff had no right to have an attorney present before submitting to the test.

When Bral arrived, he was informed that the plaintiff had refused to sign the advisement form or submit to the test and that plaintiff wanted to contact an attorney. Bral then told the plaintiff that Bral did not have to let the plaintiff contact an attorney but that Bral would let him do so if it would make the plaintiff feel better. Bral never specifically informed the plaintiff that he did not have a right to consult an attorney. Bral then took the plaintiff to a pay phone, where the plaintiff was allowed to try to find an attorney. After failing to contact an attorney, the plaintiff was charged with refusal to submit to a test.

The director of the Department of Motor Vehicles found that the plaintiff had refused to submit to a chemical test of his body fluids after being requested to do so and that his refusal was not reasonable.

The plaintiff contends that the district court (1) erred in finding that the procedures employed by the troopers in administering the implied consent law did not tend to confuse the plaintiff; (2) erred in overlooking the deeper meaning of *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906 (1973), as it relates to the plaintiff's circumstances; and (3) erred in affirming the administrative order of the director of the Department of Motor Vehicles revoking the plaintiff's driver's license under the Nebraska implied consent law.

The findings of the trial court in an appeal from an order revoking a motor vehicle operator's license under the implied consent law are reviewed de novo as in equity. *Jensen v. Jensen*, 222 Neb. 23, 382 N.W.2d 9 (1986); *Jamros v. Jensen*, 221 Neb. 426, 377 N.W.2d 119 (1985). While our review is de novo, where there are conflicts in the evidence, we may give weight to the fact that the trial court saw, heard, and observed the witnesses. *Jensen v. Jensen, supra.*

The first two assignments of error will be considered together. The plaintiff contends that this case is controlled by the principles articulated in *Wiseman v. Sullivan, supra.* In the *Wiseman* case the plaintiff was arrested and taken to the police

station on charges of driving while intoxicated. At the station he was asked to submit to a breath test and was advised that if he refused, he would lose his driver's license for 1 year. The plaintiff consented to the test. The plaintiff was allowed to make three telephone calls, two of which were unsuccessful attempts to secure legal counsel. The officer then read to the plaintiff certain "warnings" prepared by the city's legal staff. The warnings stated why the plaintiff was under arrest. It further contained *Miranda* warnings, including the statement:

> "You have the right to consult with or obtain an attorney and have him present with you during the questioning or any part of my investigation. . . . Do you willingly waive your right to remain silent and your right to have an attorney present with you, or the right to consult with an attorney at this time?"

(Emphasis omitted.) 190 Neb. at 727, 211 N.W.2d at 909. Following these warnings, the writing included accurate information concerning the implied consent statute and the consequences of refusal. The plaintiff then refused to take the test and stated he wanted to consult with an attorney.

This court found that the warnings and the implied consent statements were inherently contradictory and that only a person trained in the law could reasonably understand from the warnings that a person had no right to contact counsel regarding the breath test. Because the plaintiff's request to see an attorney was induced by confusion from the commingling of the *Miranda*-type warnings with the requirements of the implied consent statute, the request for an attorney did not constitute a refusal. We held:

> If a Miranda type warning is given in connection with information concerning the implied consent statute, it is incumbent upon the arresting officer to explicitly inform the arrested person that the constitutional rights to counsel and against self-incrimination which may have been previously explained are not applicable to the decision the driver must make concerning the giving of samples, that he has no right to consult with an attorney before making that decision, and that the right against self-incrimination does not permit the driver to refuse to

make an answer to the request for such samples.
190 Neb. at 729, 211 N.W.2d at 910.

The plaintiff in this case contends that the same type of confusion as to *Miranda* rights occurred in this case and that the confusion led him to not reasonably understand that the implied consent law gave him no right to an attorney, and therefore he cannot be said to have unreasonably refused the test.

In this case both Peters and Bral informed the plaintiff that he had no right to an attorney. The record shows that Peters repeatedly informed the plaintiff that he had no right to an attorney, prior to the time Bral allowed him to use the phone. Bral told the plaintiff that he did not have to let him use the phone to call an attorney, but would let the plaintiff do so if it would make him feel better. This case does not involve the confusion created in *Wiseman* by the reading of *Miranda*-type warnings. The patrolmen gave the plaintiff every chance (including use of the telephone) to submit to a test before citing him for refusal. Their actions did not make the plaintiff's refusal to submit to a test reasonable.

The plaintiff contends in his third assignment of error that there was no refusal to submit to a test. He argues that because he only conditionally refused to submit to the test until consulting with an attorney, it cannot be said that he refused to submit to a test within the meaning of the implied consent law.

The law is clear that anything less than an unqualified, unequivocal assent to an officer's request to submit to a chemical test constitutes a refusal. *Guerzon v. Jensen*, 225 Neb. 712, 407 N.W.2d 788 (1987); *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730 (1984).

> A refusal to submit to a chemical test occurs within the meaning of the implied consent law when the licensee, after being asked to submit to a test, so conducts himself as to justify a reasonable person in the requesting officer's position in believing that the licensee understood that he was being asked to submit to a test and manifested an unwillingness to take it.

*Pollard v. Jensen*, 222 Neb. 521, 522-23, 384 N.W.2d 640, 641 (1986); *Winter v. Peterson*, 208 Neb. 785, 305 N.W.2d 803

(1981).

Both patrolmen testified that it appeared to them that the plaintiff understood he was being asked to submit to a test. Peters testified that the plaintiff "indicated that he understood the consequences and that he understood that he was being asked to take a test. His only misunderstanding that he indicated to me was that he didn't understand why he did not have the right to an attorney." Bral testified that it appeared the plaintiff understood he was being asked to take a test because "he would not take a test until he talked to an attorney."

The only understanding required by the licensee is that he has been asked to take a test. It is not a defense that he does not understand the consequences of a refusal or is not able to make a reasoned judgment as to what course of action to take. *Pollard v. Jensen, supra; Winter v. Peterson, supra.*

We find that the evidence shows that the plaintiff understood he was being asked to submit to a chemical test and that he refused. As this court stated in *Wohlgemuth v. Pearson*, 204 Neb. 687, 691, 285 N.W.2d 102, 104 (1979), "any other result would force the director and the trial court into a psychological guessing game as to the [plaintiff's] state of mind and his degree of capability of comprehension."

The judgment of the district court is affirmed.

AFFIRMED.