DANIEL G. URWILLER, APPELLANT, V.
BEVERLY NETH, DIRECTOR, NEBRASKA DEPARTMENT
OF MOTOR VEHICLES, APPELLEE.

640 N.W.2d 417

Filed March 15, 2002.   No. S-00-815.

Greg C. Harris for appellant.

Don Stenberg, Attorney General, and Jodi M. Fenner for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Beverly Neth, director of the Nebraska Department of Motor Vehicles (Director), issued an order revoking Daniel G. Urwiller's driver's license based on a hearing officer's recommendation because (1) probable cause existed for a law enforcement officer to believe that Urwiller was operating a vehicle under the influence of alcohol and (2) Urwiller refused to submit to a chemical test. On appeal, the district court affirmed the Director's decision. Urwiller now appeals the judgment of the district court, claiming that the hearing officer's refusal to recuse herself and the Director's denial of Urwiller's discovery request

caused him unfair prejudice and that the district court erred in affirming the Director's order of revocation. For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

The record reflects that on April 15, 2000, Sgt. Tony Paulsen of the Buffalo County Sheriff's Department responded to an accident reported near Kearney, Nebraska. At the scene of the accident, Paulsen observed two mailboxes and debris in the east ditch of the roadway and a green Mercury Cougar vehicle in the west ditch. Paulsen discovered Urwiller, the lone occupant of the vehicle, sitting in the driver's seat. The vehicle's airbags had deployed. With the help of a witness at the scene, Paulsen assisted Urwiller from his vehicle and asked him if he needed medical attention, which Urwiller refused.

Once Urwiller was seated in Paulsen's patrol vehicle, Paulsen detected a "moderate odor of alcohol" around Urwiller's person and noticed that Urwiller's eyes were "bloodshot and glossy." When asked, Urwiller claimed that he had consumed approximately three drinks. Additionally, Paulsen noted a small cut on Urwiller's left nostril; when asked again if he needed medical attention, Urwiller refused.

Paulsen requested that Urwiller perform three field sobriety tests: a horizontal gaze nystagmus, an alphabet maneuver, and a counting maneuver. Urwiller indicated that he was a college graduate, but he could not recite the alphabet from A to Z beyond the letter F, nor could he count from 4 to 24 and then down from 24 to 4. Paulsen did not request that Urwiller perform any physical field sobriety tests because of inclement road and weather conditions.

When Paulsen first attempted to administer a preliminary breath test, Urwiller did not blow into the tube as Paulsen requested, but instead tried to grab the testing unit out of Paulsen's hand. Paulsen pulled the testing unit away from Urwiller, reexplained to Urwiller how to submit to the test, and advised Urwiller that if he tried to grab the equipment again, it would be considered a refusal to submit to the test. Urwiller then verbally refused to submit to the breath test.

Paulsen placed Urwiller under arrest, read him the postarrest chemical test advisement form, and requested a blood test to

determine alcohol content. Paulsen advised Urwiller that refusal to submit to a test would be a separate crime with which he would be charged, but, when asked whether he would submit to the test, Urwiller verbally refused. Paulsen filled out a "Notice/Sworn Report/Temporary License" form regarding the incident with Urwiller and submitted it to the Department of Motor Vehicles (Department).

On May 8, 2000, Urwiller submitted a discovery request to the Department, asking that he be permitted to depose Paulsen. At that time, Urwiller's hearing was scheduled for May 12. Urwiller stated in his motion that because of a head injury sustained in the accident and a preexisting health condition, he could not recall the events relevant to the license revocation proceedings and should be permitted to depose the arresting officer. The Director denied Urwiller's motion for discovery, stating that the Director can issue subpoenas to compel attendance of witnesses for the hearing only, not for depositions. The Director subsequently granted Urwiller's request for a continuance and rescheduled the hearing for May 25. Urwiller claimed at the hearing that the Director's refusal of his discovery request substantially impaired his ability to prepare for the hearing and present evidence.

At the beginning of the May 25, 2000, hearing, Urwiller requested that the hearing officer recuse herself from his case on the ground that she had been interviewed and turned down for a position with the Public Service Commission (PSC); Urwiller was one of five members of the PSC who had interviewed her. Urwiller's attorney claimed that Urwiller felt uncomfortable with this person as the hearing officer for that reason. The hearing officer overruled Urwiller's motion for recusal because it was untimely and because Urwiller failed to show that the hearing officer had any particular prejudice against him that would require her by law to recuse herself.

Urwiller testified at the hearing that he did not remember Paulsen reading him the postarrest chemical test advisement form or refusing to submit to a chemical test. Five days after the incident, Urwiller visited a physician who discovered swelling behind Urwiller's left ear. On cross-examination, Paulsen, an emergency medical technician for over 12 years, admitted that

deployment of an airbag could in some instances cause head injuries, which would in turn affect a person's ability to perform field sobriety tests by impairing balance, short-term memory, and comprehension ability.

After consideration of the evidence, the hearing officer recommended that the Director revoke Urwiller's driver's license for operating a vehicle under the influence of alcohol and for refusing to submit to a chemical test. The Director adopted the hearing officer's findings and recommendations and revoked Urwiller's driver's license for 1 year. Urwiller appealed to the district court, which affirmed the Director's order. Urwiller now appeals the judgment of the district court, and pursuant to our authority to regulate the caseloads of the appellate courts, we moved this appeal to our docket.

## ASSIGNMENTS OF ERROR

Urwiller assigns, restated and renumbered, that the district court erred (1) in failing to find the hearing officer's failure to recuse herself was unfairly prejudicial to Urwiller, (2) in failing to find that Urwiller's case had been unfairly prejudiced by the Director's refusal to permit discovery, and (3) in affirming the Director's decision to revoke Urwiller's driver's license for failure to submit to a chemical test.

## STANDARD OF REVIEW

Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001).

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Young v. Neth, ante* p. 20, 637 N.W.2d 884 (2002). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court

reaches a conclusion independent of that reached by the lower court. *Marshall, supra.*

## ANALYSIS

### HEARING OFFICER'S RECUSAL

Urwiller alleges that the hearing officer should have recused herself and argues that the district court erred in failing to reverse on that basis. Urwiller, a member of the PSC at the time of the hearing, claims that because the hearing officer applied with but was turned down for a position with the PSC, she should have recused herself because of potential bias toward Urwiller.

According to Department rules and regulations, the hearing officer "shall be unbiased and impartial as to the subject proceeding." 247 Neb. Admin. Code, ch. 1, § 003.03 (1998). Further,

> No Hearing Officer shall participate in an appeal in which they have an interest. For good cause shown or on the Director's own motion, the Hearing Officer may recuse his or herself from conducting the hearing. Motions for recusal shall be made in writing to the Director and must be received no later than three (3) days prior to the date of the hearing.

247 Neb. Admin. Code, ch. 1, § 003.04 (1998).

In formal agency adjudications, as in court proceedings, due process requires a neutral, or unbiased, adjudicatory decisionmaker. *Central Platte NRD v. State of Wyoming,* 245 Neb. 439, 513 N.W.2d 847 (1994). Administrative adjudicators serve with a presumption of honesty and integrity. *Id.* In *Dowd v. First Omaha Sec. Corp.,* 242 Neb. 347, 495 N.W.2d 36 (1993), we noted that judges and arbitrators are subject to the same ethical standards. See *State v. Pattno,* 254 Neb. 733, 579 N.W.2d 503 (1998). By extension, the same standards apply to administrative hearing officers.

Factors that may indicate partiality or bias on the part of an adjudicator are a pecuniary interest in the outcome of the proceedings, a familial or adversarial relationship with one of the parties, and a failure by the adjudicator to disclose the suspect relationship. *Dowd, supra.* Urwiller argues that the hearing officer met two of these criteria: she had an adversarial relationship with Urwiller because of her application to and

rejection by the PSC and she failed to disclose that relationship prior to the hearing.

A party seeking to disqualify an adjudicator on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of impartiality. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000); *Pattno, supra.* An adjudicator should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the adjudicator's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *Gibilisco v. Gibilisco, ante* p. 27, 637 N.W.2d 898 (2002). See, also, *Bjorklund, supra*; *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995), *disapproved on other grounds, Gibilisco, supra.*

Urwiller does not allege bias or prejudice on the part of the hearing officer, and no bias or prejudice is apparent in the record. Urwiller argues only that the hearing officer's failure to recuse herself made him uncomfortable; he does not present any ruling or occurrences that prevented him from receiving a fair hearing. The hearing officer accepted Urwiller's testimony regarding his inability to remember his interaction with Paulsen and included it in her findings of fact. Other than her PSC interview with Urwiller and four other commissioners, the hearing officer stated that she did not have any personal contact with Urwiller, although she did recognize Urwiller's name when the Department appointed her as hearing officer for Urwiller's case.

Even though Urwiller's motion to recuse was untimely, the hearing officer stated that she was willing to recuse herself on account of his alleged discomfort if Urwiller would waive the 45-day statutory requirement; Urwiller, however, refused to waive the 45-day requirement. The hearing officer openly discussed her previous contact with Urwiller and asserted her lack of bias or personal prejudice, stating that she would have recused herself had she felt any conflict.

Under these facts, the district court correctly concluded that Urwiller did not overcome the presumption of impartiality in favor of the hearing officer, nor did he effectively demonstrate that a reasonable person who knew the circumstances of the

case would question the hearing officer's impartiality under an objective standard of reasonableness. See *Pattno, supra.* Nothing in the record indicates that the district court's ruling on this issue was arbitrary, capricious, unreasonable, outside the confines of the law, or unsupported by competent evidence. See *Young v. Neth, ante* p. 20, 637 N.W.2d 884 (2002). Urwiller's first assignment of error is without merit.

## DISCOVERY REQUEST

Urwiller's second assignment of error alleges that the district court erred in affirming the Director's order of revocation because the Director refused to allow Urwiller to depose Paulsen, resulting in prejudice to Urwiller.

In any contested case before an administrative agency, all parties shall be afforded, after reasonable notice, the opportunity to be heard and present arguments and evidence. See Neb. Rev. Stat. § 84-913 (Reissue 1999). To this end, an administrative hearing officer has the authority to issue subpoenas and discovery orders. See Neb. Rev. Stat. § 84-914(2) (Reissue 1999). The Director of the Department promulgates rules and regulations to govern the conduct of a license revocation hearing and ensure that the hearing will proceed in an orderly manner. Neb. Rev. Stat. § 60-6,205(7) (Reissue 1999). Under this authority and Neb. Rev. Stat. § 84-909(2) (Reissue 1999), the Department adopted 247 Neb. Admin. Code, ch. 1, §§ 003, 008, and 009 (1998), which delineate the Director's and hearing officers' powers regarding discovery.

The Director argues that neither § 60-6,205 nor the Department's rules and regulations provide the Director with the authority to subpoena witnesses for prehearing depositions. Sections 003.04B and 003.04C give the hearing officer authority to "issue subpoenas as authorized" and "compel discovery." Section 009.01 provides that if a party wants to present a witness, that witness' attendance at the hearing should be arranged; if a witness refuses to appear voluntarily, "a party may make a request for a subpoena." Section 008.01 provides that "all discovery motions may be granted or denied at the Director's discretion." The Director asserts that under these regulations, subpoenas may be issued to compel attendance at the hearing only

and that it was within the Director's discretion to deny Urwiller's discovery request.

We are not convinced by the Director's interpretation of the regulation. In crafting § 84-914(2), the Legislature gave administrative hearing officers the power to issue subpoenas and did not limit the power to do so by stating that a subpoena may only be used to compel attendance at hearings. Further, no specific statute relating to the Department states otherwise. However, we need not reach this issue because, assuming without deciding that the Director was empowered to issue the requested subpoena for a discovery deposition, the Director did not abuse her discretion in refusing Urwiller's discovery request under these circumstances.

At the hearing, Urwiller had the opportunity to cross-examine Paulsen, and his counsel received time off the record in which to review documents and prepare questions for Paulsen. Urwiller does not allege that he could not obtain any particular information because of the Director's denial of his discovery request, nor is any such prejudice apparent from the record. Based on Paulsen's presence at the hearing and Urwiller's ability to cross-examine Paulsen after being afforded a full opportunity to prepare for the cross-examination, we conclude that Urwiller was neither prejudiced nor denied due process, and the district court's decision to affirm the Director's order of revocation on this ground was not arbitrary, capricious, or unreasonable.

## REFUSAL TO SUBMIT TO CHEMICAL TEST

Urwiller's third assignment of error alleges that the district court erred in affirming the Director's decision to revoke his driver's license based on Urwiller's refusal to submit to a chemical test. The only issues to be addressed at the administrative license revocation hearing are (1) whether the law enforcement officer had probable cause to believe the licensee was operating or in actual physical control of a motor vehicle in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1999) and (2) whether the licensee refused to submit or failed to complete a chemical test after being requested to do so by the peace officer. See 247 Neb. Admin. Code., ch. 1, § 018 (1998). Urwiller urges that because he sustained a head injury and does not remember refusing the chemical test, he should not be held accountable for his alleged refusal.

■■■■■■ An arrested motorist refuses to submit to a chemical test when the motorist's conduct, demonstrated under the circumstances confronting the officer requesting the chemical test, justifies a reasonable person's belief that the motorist understood the officer's request for a test and manifested a refusal or unwillingness to submit to the requested test. *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996); *State v. Clark*, 229 Neb. 103, 425 N.W.2d 347 (1988). See *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991). There is no such thing as a conditional or qualified refusal; anything short of an unqualified, unequivocal assent to an officer's request that the arrested licensee take the test constitutes a refusal to do so. *Ruch v. Conrad*, 247 Neb. 318, 526 N.W.2d 653 (1995); *Green, supra*; *Clontz v. Jensen*, 227 Neb. 191, 416 N.W.2d 577 (1987).

In *Wohlgemuth v. Pearson*, 204 Neb. 687, 285 N.W.2d 102 (1979), the motorist testified that he did not recall the events surrounding a car accident which led to his refusal to submit to a chemical test. Family members and witnesses described the motorist as unresponsive to questions, disoriented, and unable to carry on a conversation; the motorist's treating physician diagnosed a cerebral concussion. *Id.* State troopers repeatedly asked the motorist to submit to a chemical test; the motorist repeatedly refused. Despite the physician's testimony that the motorist did not have the presence of mind to make a valid judgment at the time of his refusal to submit to the chemical test, this court concluded that a refusal to submit to a chemical test occurs where the conduct of an arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the chemical test. *Id.* Because the motorist in *Wohlgemuth* knew that he was being asked a question and he manifested a refusal, he was, despite his concussion and inability to remember, reasonably perceived to be refusing to submit to the test.

■■■■ Urwiller argues that no evidence exists to support the Director's conclusion that Urwiller understood he was being asked to take a chemical test and that he refused. The burden of disproving the Director's case, however, rested on Urwiller. In

an administrative license revocation hearing, "the State establishes its prima facie case for license revocation by submitting the arresting officer's report. The burden of proof thereafter rests solely with the motorist, who must show by a preponderance of the evidence that the requirements for [the revocation] are not satisfied." *State v. Young*, 249 Neb. 539, 543, 544 N.W.2d 808, 812 (1996). See, also, *McGuire v. Department of Motor Vehicles*, 253 Neb. 92, 568 N.W.2d 471 (1997); *McPherrin v. Conrad*, 248 Neb. 561, 537 N.W.2d 498 (1995).

Urwiller has not met his burden of disproving the Director's prima facie case. Paulsen testified that Urwiller refused to submit to the test, both by grabbing the testing equipment and by verbally refusing the test. Urwiller's claim that he does not remember the incident does not disprove the recitations of Paulsen's sworn report. Moreover, the minor nature of Urwiller's injuries does not support a finding that Urwiller lacked the capacity to understand Paulsen's request for him to submit to a chemical test. Under these circumstances, a reasonable person would be justified in believing that Urwiller understood Paulsen's request that Urwiller submit to a chemical test and that he refused to submit. Thus, the district court did not err in affirming the Director's order of revocation.

## CONCLUSION

For the reasons stated above, each of Urwiller's assignments of error is without merit. We, therefore, affirm the judgment of the district court.

AFFIRMED.