STATE OF NEBRASKA, APPELLEE, V. TERRY L. CLARK, APPELLANT.

425 N.W.2d 347

Filed July 1, 1988.   No. 87-802.

Richard H. Hoch, of Hoch & Steinheider, for appellant.

Robert M. Spire, Attorney General, and Yvonne E. Gates for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

After a bench trial, the county court for Nemaha County found Terry L. Clark guilty of refusing to submit to a blood-alcohol test authorized by Neb. Rev. Stat. § 39-669.08 (Cum. Supp. 1986). On appeal, the district court affirmed Clark's conviction and sentence. We affirm.

In a bench trial of a criminal case and in determining the sufficiency of evidence to sustain a conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact. The finding of a defendant's guilt must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support such finding. *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987); *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987).

Under Neb. Rev. Stat. § 24-541.06(1) (Reissue 1985), concerning appeals from the county court, the district court conducts a review for error in the county court record. *State v. Moore, supra*. See, also, *State v. Daniels*, 224 Neb. 264, 397 N.W.2d 631 (1986) (district court as an intermediate court of appeals).

Late in the evening of January 30, 1987, Police Officer Jerry M. Railsback, while on patrol in Auburn, Nebraska, observed two tandem westbound cars approaching his eastbound cruiser. The second approaching car was closely following the first and had its "bright" headlamps on. When the driver of the second vehicle failed to dim his car's headlamps, Officer Railsback turned around his cruiser and overtook and stopped the second, or trailing, vehicle of the pair of westbound

automobiles. Officer Railsback then approached the stopped vehicle and asked the driver to produce an operator's license and vehicle registration. At that point, Railsback smelled the strong odor of alcohol emanating from the driver, Clark, 17 years of age, and asked Clark if he had been drinking. With Clark was Rick Shaw, 18 years of age. When Clark denied drinking, Railsback asked Clark to step out of the car and perform some field sobriety tests. Although Clark did successfully recite the "English alphabet," Clark could not walk heel-to-toe in a straight line. Officer Railsback requested Clark to join him in the cruiser, where Railsback administered a preliminary breath test through an "Alco-Sensor." Clark failed that preliminary test, was placed under arrest for drunk driving, and was transported by Railsback to the police station.

At the police station, an officer read the "Implied Consent Form" to Clark, who signed that form for a chemical test to determine his blood-alcohol level and agreed to take a breath test on an Intoxilyzer Model 4011AS. Officer James Kattes, a certified operator of the Intoxilyzer, administered the breath test to Clark. Officer Kattes asked Clark to blow into the Intoxilyzer and explained that the machine's green light would be activated and remain activated, so long as the person who was being tested blows sufficient breath into the tube leading to the testing chamber of the Intoxilyzer. Officer Kattes described Clark's contact with the Intoxilyzer:

> I asked Mr. Clark to blow into the intoxilizer; I showed him a green light on the machine that will light up when there's air passing through the tube. If there's not enough air passing through the tube the light will go out; I also explained that to Mr. Clark. Mr. Clark's first attempt he didn't blow hard enough into the machine; he blew for a short time and the light went back out; I told him he had to blow harder, and he never did. It appeared that he was putting his tongue over the end of the tube. So, I advised Mr. Clark that I was gonna give him another chance on the intoxilizer, and if he refused this time, or didn't give a sufficient sample, he would be written for a refusal and charged with the same.

Officer Kattes reset the Intoxilyzer for a test of Clark's breath

and "again instructed Terry to blow through the machine; he again lit the light one time and that was it, he quit blowing again." After resetting the Intoxilyzer for a second time, Officer Kattes informed Clark that

> this [was] his last chance, that he was going to have to give a good sample. Told him to blow into the machine, which he began to do; I encouraged him during the time he was blowing into the machine by saying, "keep blowing, keep blowing", continued to say that until all of a sudden he quit blowing and said, that's enough . . . .

In his three contacts with the Intoxilyzer, Clark never supplied a sufficient sample of his breath for a test or, as described by Officer Railsback, "[I]t wasn't an adequate sample, the green light come [sic] on and then it went off, and he didn't blow hard enough . . . ."

The police issued a citation which included the charge that Clark refused to submit to the breath test to determine Clark's blood-alcohol level. The officers denied using any "profane" or vulgar language in conjunction with their direction that Clark submit to the Intoxilyzer test.

The complaint alleged that Clark refused to submit to a breath test in response to a proper direction by a law enforcement officer requesting such test. Section 39-669.08(4) provides in part:

> Any person arrested as provided in this section may, upon the direction of a law enforcement officer, be required to submit to a chemical test of his or her blood, breath, or urine for a determination of the alcohol content. Any person who refuses to submit to a chemical blood, breath, or urine test required pursuant to this section shall be subject to the administrative revocation procedures of the Director of Motor Vehicles provided in sections 39-669.07 to 39-669.09 and 39-669.14 to 39-669.18 and shall be guilty of a crime and, upon conviction thereof, shall be punished as [set forth in subsections (a) through (c)].

Clark testified that, during his attempts to breathe into the Intoxilyzer, the officers "were telling me to quit fucking with the machine, that I was fucking with the machine, and to keep blowin' keep blowin' . . . . That I was fucking with the machine

. . . tellin' me I was fuckin' with the machine still . . . quit fuckin' with the [Intoxilyzer]." Clark also testified that he believed the officers were trying to "get" him and that he "was scared" throughout the attempted Intoxilyzer tests.

After the police placed Clark in a cell at the county jail, Clark's father was reached by telephone and informed about bail for Clark's release. Cindy and Steve Cole, Clark's sister and brother-in-law, arrived at the sheriff's office. Although Clark had never requested a blood or urine test, because he believed the type of test was a matter within the police officer's discretion, the Coles asked that Clark be given a blood test at a local hospital, a test to be given at Coles' expense. The police refused Coles' request to allow a blood test on Clark.

The county court for Nemaha County found Clark guilty of refusing to submit to a chemical test authorized and required by § 39-669.08. The district court affirmed Clark's conviction and sentence.

Clark claims his conviction must be set aside, because (1) Clark's conduct did not constitute a refusal to take the Intoxilyzer breath test authorized by § 39-669.08, (2) police refusal to allow a blood test on Clark prevents conviction for refusal to submit to the Intoxilyzer test, and (3) evidence is insufficient to sustain Clark's conviction.

Neb. Rev. Stat. § 39-669.09 (Reissue 1984) provides:

> The law enforcement officer who requires a chemical blood, breath, or urine test pursuant to section 39-669.08 may direct whether the test shall be of blood, breath, or urine; *Provided*, that when the officer directs that the test shall be of a person's blood or urine, such person may choose whether the test shall be of his blood or urine. The person tested shall be permitted to have a physician of his choice evaluate his condition and perform or have performed whatever laboratory tests he deems appropriate in addition to and following the test administered at the direction of the law enforcement officer. If the officer shall refuse to permit such additional test to be taken, then the original test shall not be competent as evidence. Upon the request of the person tested, the results of the test taken at the direction of the

law enforcement officer shall be made available to him.

Clark asserts that he agreed to take the Intoxilyzer breath test and contends in his brief at 12 that the officers' "profanity and abusiveness . . . [led] to an unconducive testing atmosphere" and that the "extreme harassment by the officers during the testing" prevented completion of the Intoxilyzer test. Brief for Appellant at 14. Paraphrased, Clark's contention is that the officers used "continual profanity" or vulgarity in their language which rendered Clark breathless or so intimidated that he was unable to provide a sample of his breath to complete the breath test.

An arrested motorist refuses to submit to a chemical test authorized by § 39-669.08 to determine the motorist's blood-alcohol level when the motorist's conduct, demonstrated under the circumstances confronting the officer requesting the chemical test, justifies a reasonable person's belief that the motorist understood the officer's request for a test and manifested a refusal or unwillingness to submit to the requested test. See, *State v. Medina*, 227 Neb. 736, 419 N.W.2d 864 (1988); *State v. Richter*, 225 Neb. 871, 408 N.W.2d 324 (1987). Cf., *Clontz v. Jensen*, 227 Neb. 191, 416 N.W.2d 577 (1987) (administrative revocation of operator's license; implied consent law); *Jamros v. Jensen*, 221 Neb. 426, 377 N.W.2d 119 (1985). Anything less than an unqualified, unequivocal assent to an arresting officer's request to submit to a chemical test constitutes a motorist's refusal to submit to a chemical test authorized by § 39-669.08. See, *State v. Medina, supra*; *Clontz v. Jensen, supra*.

In the context of a civil proceeding arising out of an administrative revocation of a motorist's license as the result of refusal to submit to a chemical test under § 39-669.08 (Reissue 1984), this court, in *Jamros v. Jensen, supra*, recognized that an arrested motorist's physical inability to perform a breath test may excuse conduct which might otherwise be construed or treated as a refusal to submit to a breath test under the implied consent law. In *State v. Morse*, 211 Neb. 448, 451, 318 N.W.2d 893, 895 (1982), this court observed: "It is arguable that a true physical disability to take a breath test without an opportunity to submit to another form of test would be due process

violation." Therefore, we hold that, in a criminal prosecution for refusal to submit to a breath test authorized by § 39-669.08 (Cum. Supp. 1986), a defendant's physical inability to perform the breath test may excuse conduct which would otherwise be construed or treated as a refusal to submit to such test.

However, notwithstanding an arrested motorist's expressed consent or agreement to take a breath test authorized by § 39-669.08, the motorist's subsequent conduct may be the basis for an inference that the motorist has withdrawn or revoked the previous consent to such test or has feigned consent to the test and, therefore, has refused to submit to the statutorily authorized breath test. See, *Ontiveros v. Arizona Dept. of Transp.*, 151 Ariz. 542, 729 P.2d 346 (1986); *People v. Schuberth*, 115 Ill. App. 3d 302, 450 N.E.2d 459 (1983); *Com., Dept. of Transp., Bur. of Traffic v. Hanes*, 49 Pa. Commw. 407, 411 A.2d 571 (1980); *Matter of Di Girolamo v Melton*, 60 A.D.2d 960, 401 N.Y.S.2d 893 (1978).

Whether a motorist's physical inability prevents performance of a breath test authorized by § 39-669.08 is a question of fact. *State v. Morse, supra.*

In reference to § 39-669.09, we have held that an arrested motorist's right to designate a blood or urine test exists only when the arresting officer has directed that the chemical test be performed on a sample of the motorist's blood or urine. *State v. Thomas*, 223 Neb. 759, 393 N.W.2d 711 (1986); *State v. Morse, supra.*

Clark claims that, contrary to § 39-669.09, he was denied the right to an evaluation by a physician of his selection and a blood test. Whether § 39-669.09 extends such right to one from whom a breath test is requested, we need not decide. A key phrase in § 39-669.09 is "the person tested," which necessitates the conclusion that a chemical test must have been administered concerning the arrested motorist before such motorist has the right to medical evaluation and chemical tests. Without some chemical test administered at the direction of a law enforcement officer, there can be no "additional test" regarding an arrested motorist, as provided by § 39-669.09. Therefore, we hold that, if an arrested motorist has refused a chemical test to determine the motorist's blood-alcohol level in accordance with

§ 39-669.08(4), the motorist has no right to a physician's evaluation of the motorist's condition or chemical tests in addition to that directed by the law enforcement officer. See *McKinnon v. State*, 709 S.W.2d 805 (Tex. App. 1986) (Texas statute substantially similar to § 39-669.09 did not provide for an alternate test, but an additional test; when defendant did not submit to a chemical test, there was no right to an independent analysis by a physician of defendant's choice).

While Clark claims that his inability to complete the breath test was the result of the officers' use of a four-letter word in its various forms as a verb or gerund, the county court, as the trier of fact, determined whether Clark was physically unable to perform the breath test or whether the incomplete breath test resulted from Clark's actual refusal to submit to and complete that test. Coarse conduct, such as that attributed by Clark to the officers, is a questionable police tactic under the circumstances. Even if the testimony about the officers' offensive and vulgar language were accepted as true, the effect of such language in relation to the incomplete breath test presented a question of fact concerning the cause of the uncompleted test and was a question resolved against Clark when the court found that Clark refused to submit to the breath test.

Because Clark's refusal disqualified him as a "person tested" within the purview of § 39-669.09, the officers properly refused the request that a blood test be performed on Clark.

There is sufficient evidence to sustain the county court's findings of fact and Clark's guilt, namely, that Clark refused to submit to the breath test authorized by § 39-669.08.

AFFIRMED.