CHARLES C. KEYS, APPELLEE, V. DEPARTMENT OF MOTOR VEHICLES, AN ADMINISTRATIVE AGENCY OF THE STATE OF NEBRASKA, APPELLANT.

546 N.W.2d 819

Filed May 3, 1996. No. S-94-549.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellant.

Phillip G. Wright, of Quinn & Wright, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

In this appeal, we are asked to determine whether a motorist who provides a sufficient sample of breath to register a digital reading on an Intoxilyzer, but who does not provide enough breath to cause the machine to print the result on a test record card, has submitted to a breath test as required by Nebraska law.

Following an administrative hearing, the driver's license of Charles C. Keys was revoked for a period of 1 year by the

director of the Department of Motor Vehicles for refusing to submit to, or failing to complete, a chemical test of his breath. See Neb. Rev. Stat. §§ 60–6,205 to 60–6,208 (Reissue 1993). On appeal, the district court for Cass County reversed the director's order of revocation and reinstated Keys' driver's license, concluding that Keys "did submit to and complete a chemical test of his breath as required by law." The department appeals the district court's decision.

Upon the authority granted to us by Neb. Rev. Stat. § 24–1106 (Reissue 1995) to regulate the caseloads of the appellate courts of this state, we remove the appeal to this court. We conclude that Keys submitted to and completed a chemical test of his breath as required by Nebraska law. We therefore affirm the district court's decision.

## BACKGROUND

On January 23, 1994, Keys was arrested by Officer Brian Paulsen of the Plattsmouth Police Department for driving while under the influence of alcohol (DUI). Following his arrest, Keys was transported to the Cass County sheriff's office where he was requested by Paulsen to submit to a chemical breath test. Paulsen administered the breath test on an Intoxilyzer Model 4011AS following a checklist procedure. At the administrative hearing, Paulsen testified:

> Mr. Keys was instructed . . . how to blow in the machine, he failed to properly blow into the machine. The training is that the administrating officer should hold the mouthpiece and part of the reason you hold the mouthpiece is to feel air coming around the mouthpiece rather than through it. On the first attempt, that was exactly what was going on. I was holding the mouthpiece and he was blowing around the mouthpiece. I could feel the air hitting my hand. Also the light — the indicator light on the Intoxilyzer was not lighting up, meaning the air was not going into the machine.

As a result, the Intoxilyzer did not register any measure of Keys' blood alcohol content, digitally or by printout, on this first attempt. Keys was then "given a second attempt" to provide a sufficient sample of breath. Paulsen again explained to Keys

that a long sustained breath was needed to properly cycle the machine, rather than short puffs. Paulsen also warned Keys that if the sample of breath provided was not sufficient on the second attempt, he would be cited for refusing to submit to the test.

On the second attempt, Keys again failed to provide a sufficient sample of breath for the Intoxilyzer to print the result on a test record card. However, Keys provided enough breath for the Intoxilyzer to register a digital reading of .110 of 1 gram of alcohol per 210 liters of his breath. No testimony was adduced that Paulsen felt air around the mouthpiece, or of any other willful noncooperation on the second attempt.

Keys was cited for DUI and refusing to submit to a chemical breath test. Following an administrative hearing, the director revoked Keys' driver's license for 1 year. The district court for Cass County reversed the director's order. The department appeals.

## ASSIGNMENTS OF ERROR

The department alleges the district court erred in (1) reversing the director's order of revocation and ordering the director to reinstate Keys' operator's license and (2) finding that Keys did submit to and complete a chemical test of his breath as required by law.

## STANDARD OF REVIEW

An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act. Neb. Rev. Stat. § 84–918 (Reissue 1994); *Slack Nsg. Home v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d 285 (1995).

The judgment rendered or final order made by the district court in an Administrative Procedure Act appeal may be reversed, vacated, or modified by the Supreme Court or the Court of Appeals for errors appearing on the record. *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995); *Rose Equip., Inc. v. Ford Motor Co.*, 248 Neb. 344, 535 N.W.2d 404 (1995); *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994).

When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the

record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *White v. State*, 248 Neb. 977, 540 N.W.2d 354 (1995); *Rose Equip., Inc. v. Ford Motor Co., supra*; *George Rose & Sons v. Nebraska Dept. of Revenue*, 248 Neb. 92, 532 N.W.2d 18 (1995).

## ANALYSIS

The department alleges the district court erred in concluding that Keys "did submit to and complete a chemical test of his breath as required by law." Neb. Rev. Stat. § 60-6,197(4) (Reissue 1993) states in pertinent part:

Any person arrested [for driving under the influence] may, upon the direction of a peace officer, be required to submit to a chemical test or tests of his or her blood, breath, or urine for a determination of the concentration of alcohol or the presence of drugs. . . . Any person who refuses to submit to such test or tests required pursuant to this section shall be subject to the administrative revocation procedures provided in sections 60-6,205 to 60-6,208 and shall be guilty of a crime and upon conviction punished as [set forth in subsections (a) through (c).]

Section 60-6,205(2) states in pertinent part:

If a person arrested pursuant to section 60-6,197 refuses to submit to the chemical test of blood, breath, or urine required by that section . . . the arresting peace officer, as agent for the Director of Motor Vehicles, shall verbally serve notice to the arrested person of the intention to immediately impound and revoke the operator's license of such person and that the revocation will be automatic thirty days after the date of arrest unless a petition for hearing [before the director of the Department of Motor Vehicles] is filed within ten days after the date of arrest . . . .

Section 60-6,206(1) states in pertinent part:

At the expiration of thirty days after the date of arrest pursuant to section 60-6,197 or if after a hearing pursuant to section 60-6,205 the Director of Motor Vehicles finds that the impounded operator's license should be revoked,

the director shall (a) revoke the operator's license of a person arrested for refusal to submit to a chemical test of blood, breath, or urine as required by section 60-6,197 for a period of one year . . . .

The department argues that although the Intoxilyzer registered a digital reading of .110 on the second sample of breath that Keys provided, Keys nonetheless failed to complete the test, because the sample was insufficient to cause the machine to print the result on a test record card. Our DUI and administrative license revocation statutes are silent on whether the results of a chemical breath test must be shown on a test record card in order to be legally sufficient, or whether a digital Intoxilyzer reading will suffice. The department relies upon *State v. Clark*, 229 Neb. 103, 108, 425 N.W.2d 347, 351 (1988), in which this court held:

An arrested motorist refuses to submit to a chemical test authorized by [§ 60-6,197(4)] to determine the motorist's blood-alcohol level when the motorist's conduct, demonstrated under the circumstances confronting the officer requesting the chemical test, justifies a reasonable person's belief that the motorist understood the officer's request for a test and manifested a refusal or unwillingness to submit to the requested test. [Citations omitted.] Anything less than an unqualified, unequivocal assent to an arresting officer's request to submit to a chemical test constitutes a motorist's refusal to submit to a chemical test authorized by [§ 60-6,197(4)].

The *Clark* court elaborated that

notwithstanding an arrested motorist's expressed consent or agreement to take a breath test authorized by [§ 60-6,197(4)], the motorist's subsequent conduct may be the basis for an inference that the motorist has withdrawn or revoked the previous consent to such test or has feigned consent to the test and, therefore, has refused to submit to the statutorily authorized breath test.

229 Neb. at 109, 425 N.W.2d at 351.

As in the instant case, Clark's breath test was administered on an Intoxilyzer Model 4011AS. In that case, after three attempts, Clark failed to supply a sufficient sample of breath for

a test. The officer testified that each time the green light " 'come [sic] on and then it went off, and he didn't blow hard enough . . . .' " *Id.* at 106, 425 N.W.2d at 350. The officer further testified that " '[i]t appeared that [Clark] was putting his tongue over the end of the tube. . . .' " *Id.* at 105, 425 N.W.2d at 350. The court concluded that "[t]here is sufficient evidence to sustain the county court's findings of fact and Clark's guilt, namely, that Clark refused to submit to the breath test authorized by [§ 60–6,197(4)]." 229 Neb. at 110, 425 N.W.2d at 352.

However, in *Clark*, the issue was not whether the failure to provide a sufficient sample of breath to produce a test record card, even though a digital reading was attained, constitutes a failure to comply with a chemical breath test as requested by an officer. In fact, in *Clark*, there is no indication that any digital reading was attained. Furthermore, the officer testified that on all three attempts, Clark either " 'didn't blow hard enough' " or that he " 'was putting his tongue over the end of the tube.' "

In the instant case, Paulsen testified that on Keys' first attempt, Keys was blowing around the mouthpiece, because as the officer was holding the mouthpiece, he could feel Keys' breath hitting his hand. Paulsen further testified that "the indicator light on the Intoxilyzer was not lighting up, meaning the air was not going into the machine." However, no such testimony of willful noncooperation was adduced concerning the second sample of breath provided by Keys. In fact, on the second attempt, Keys provided enough breath to register a digital reading of .110 on the Intoxilyzer. As a result, *Clark* is distinguishable in that it fails to address the same facts and circumstances that are before this court in the instant case.

The department also cites *Call v. Kansas Dept. of Revenue,* 17 Kan. App. 2d 79, 831 P.2d 970 (1992), and *Baker v. Colorado*, 42 Colo. App. 133, 593 P.2d 1384 (1979), in support of their position. However, as with *State v. Clark, supra*, these cases are distinguishable.

In *Call,* the court held that a "failure to provide a deep lung breath sample required for testing by the intoxilyzer machine constitutes a test refusal." 17 Kan. App. 2d at 83, 831 P.2d at 973. In that case, Call submitted to a breath test which

produced a breath alcohol measure of .124. As in the instant case, the printout from the machine indicated that the provided sample was insufficient to register a test result on the printout. However, in *Call*, both sides stipulated that when the machine indicates " 'deficient sample,' " it means that a deep lung sample has not been obtained. *Id.* at 80, 831 P.2d at 971. In the instant case, there was no such stipulation.

In *Baker v. Colorado, supra*, the court held that Baker failed to comply with Colorado's implied consent statute by not cooperating in blowing up a balloon on a blood alcohol testing device. In that case, the state was able to procure a reading of Baker's blood alcohol content from what breath he blew into the balloon. The test on the partially filled balloon measured Baker's blood alcohol concentration at .228. However, at Baker's hearing, the arresting officer testified that "Baker had a coin in his mouth which he was biting, while placing his tongue over the entrance to the balloon so that air could not go into it." 42 Colo. App. at 134, 593 P.2d at 1385. Again, in the instant case, no such testimony of willful noncooperation was adduced concerning the second sample of breath provided by Keys.

Because neither our statutes nor case law addresses the issue before us, we look to the applicable Nebraska Department of Health regulations for guidance. The regulations provide the rules "relating to analyses for the determination of the alcohol content in blood, breath, or urine while driving or boating under the influence of alcohol." 177 Neb. Admin. Code, ch. 1 (1993). The definition section of title 177 provides in pertinent part that "[s]pecifically designed testing device or testing device means an instrument designed and manufactured specifically for the purpose of alcohol analysis by a particular method for blood, urine, or breath and is calibrated to provide *digital readings, graphic results, or both.*" (Emphasis supplied.) 177 Neb. Admin. Code, ch. 1, § 001.07. Attachment 3 to 177 Neb. Admin. Code, ch. 1, provides a checklist of the techniques, approved and prescribed by the Department of Health, to be used by Class B permitholders when conducting chemical tests, via breath specimens, on an Intoxilyzer Model 4011AS. Paragraph 12 of attachment 3 specifically calls for the testing

officer to set forth the *digital* reading obtained through the testing of the sample.

Because there is no statutory or regulatory requirement that the results of a chemical breath test be shown on a test record card, and no testimony of willful noncooperation was adduced concerning the second breath sample provided by Keys, we conclude that the district court's decision that Keys submitted to the breath test conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

## CONCLUSION

We conclude that a motorist who provides a sufficient sample of breath to register a digital reading on an Intoxilyzer, but who does not provide enough breath to cause the machine to print the result on a test record card, has submitted to a breath test as required by Nebraska law in the absence of any statutory or regulatory requirement that the results be printed on a test record card, and in the absence of any evidence of willful noncooperation. We therefore affirm.

AFFIRMED.