MICHAEL C. MORRISSEY, APPELLEE, V.
DEPARTMENT OF MOTOR VEHICLES, APPELLANT.
647 N.W.2d 644

Filed July 26, 2002. No. S-01-268.

Don Stenberg, Attorney General, and Jodi M. Fenner for
appellant.

R. Douglas Stave, of Stave, Dougherty & Stave, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

In this case, the Nebraska Department of Motor Vehicles (department) appeals from an order of the district court for Douglas County. After an administrative license revocation hearing, the department concluded that Michael C. Morrissey had refused to submit to a chemical test of his breath. In part on this basis, the department revoked Morrissey's driver's license. The district court reversed, relying on *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996). The court found that Morrissey submitted to a chemical test of his breath when he provided a sample of breath sufficient to register a digital result on a test record card. We reverse, and remand with directions.

## BACKGROUND

On May 21, 2000, Officer Kenneth Randall of the Omaha Police Department was dispatched to the scene of a car accident on 60th Street near Interstate 80 in Omaha, Nebraska. At the scene, Randall discovered Morrissey behind the wheel of a vehicle situated on the median on 60th Street. Upon approaching the vehicle, Randall detected a strong odor of alcohol coming from Morrissey and the vehicle. Randall also observed that Morrissey had bloodshot eyes and appeared to be extremely intoxicated and sleepy. Randall attempted to administer a field sobriety test; however, Morrissey's condition prevented him from completing the test. Morrissey also failed a preliminary breath test at the scene.

Morrissey was arrested and transported to police headquarters. At the police station, Morrissey was read a postarrest chemical test advisement form and he agreed to submit to the chemical test. The chemical test was conducted by an analyst in the presence of two Omaha police officers, including Randall. Morrissey placed the mouthpiece of the Intoxilyzer 5000 in his mouth and blew a "small" sample into the machine. The test record card indicated that Morrissey had an alcohol content of 0.203 grams of alcohol per 210 liters of breath. However, the test record card

also indicated that the sample of breath obtained from Morrissey was deficient. Morrissey was told that he needed to repeat the test to produce a sufficient sample. Morrissey refused to submit to any further chemical test. Randall completed a "Notice/Sworn Report/Temporary License" (sworn report) and provided a copy to Morrissey. The sworn report indicates that Morrissey was requested to submit to a chemical test and that he "refused to submit to a chemical test or tests of breath, blood or urine."

Morrissey petitioned for a hearing to contest the revocation of his drivers' license. At the hearing, testimony was received from Randall and exhibits were received into evidence, including the sworn report. Also received into evidence was a copy of the test record card and the chemical test checklist. The checklist set forth the steps to be followed when administering a chemical test using an Intoxilyzer 5000. One of the steps stated: "SUBJECT DIGITAL READING: 0.____ of a gram of alcohol per 210 liters of breath." Handwritten in the blank space of that step was the number ".203."

Following the license revocation hearing, the department entered an order revoking Morrissey's driver's license for 1 year. As a basis for revocation, the department found in part that Morrissey had refused to submit to a chemical test. Morrissey appealed the order of revocation to the district court. The court reversed, finding that pursuant to *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996), Morrissey did not refuse to submit to a chemical test. The department appealed from the district court order, and we moved the case to our docket.

## ASSIGNMENTS OF ERROR

The department assigns that the district court erred in (1) reversing the decision of the director of the department and reinstating Morrissey's driver's license and (2) finding that Morrissey had submitted to and completed a valid chemical test pursuant to Neb. Rev. Stat. § 60-6,205 (Reissue 1998).

## STANDARD OF REVIEW

■ Decisions of the director of the Department of Motor Vehicles, pursuant to Nebraska's administrative revocation statutes, are appealed under the Administrative Procedure Act (APA).

*Reiter v. Wimes*, 263 Neb. 277, 640 N.W.2d 19 (2002). See Neb. Rev. Stat. § 60-6,208 (Reissue 1998).

■ A judgment or final order entered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Davis v. Wimes*, 263 Neb. 504, 641 N.W.2d 37 (2002). When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Reiter v. Wimes, supra.*

■ Whether a decision conforms to the law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.*

■ Interpretation of statutes presents a question of law, and an appellate court is obligated to reach an independent conclusion, irrespective of the decision made by the court below, with deference to an agency's interpretation of its own regulations, unless plainly erroneous or inconsistent. *Davis v. Wimes, supra.*

## ANALYSIS

The fundamental issue in this appeal is whether the evidence offered by the department established that Morrissey refused to provide a sufficient sample of breath. As a general rule, the offer by the department of the sworn report at the hearing establishes the department's prima facie case and the burden shifts to the driver to refute such evidence. *McPherrin v. Conrad*, 248 Neb. 561, 537 N.W.2d 498 (1995). The rule presupposes a proper report, that is, a sworn report which comports with statutes and the relevant administrative rules and regulations. If the sworn report is not proper, the department may, nevertheless, establish its case by other means, such as by the testimony of a witness who observed the administration of the breath test. In this case, we conclude that the department carried its burden by means of live testimony.

■ In its argument to this court, the department places considerable emphasis on the Nebraska Department of Health and Human Services Regulation and Licensure's rules and regulations, 177 Neb. Admin. Code, ch. 1 (1998), which we take judicial notice of. See *City of Lincoln v. Central Platte NRD*, 263 Neb. 141, 638 N.W.2d 839 (2002) (this court will take judicial notice of general rules and regulations established and published by Nebraska state agencies under authority of law). Among the rules and regulations relied upon by the department is 177 Neb. Admin. Code, ch. 1, § 002.01A (1998), which instructs that "[n]o digital result shall be reported on the checklist . . . if the test record card indicates an insufficient sample." The test record card in this case indicates that Morrissey provided an insufficient sample of breath during the chemical test. This insufficient sample produced a digital reading on the test record card of 0.203 grams of alcohol per 210 liters of breath. Yet, despite the clear command of § 002.01A, the analyst who conducted Morrissey's chemical test reported on the checklist that Morrissey's blood alcohol level was 0.203 grams of alcohol per 210 liters of breath.

■ We deem this violation of § 002.01A to be significant. We have previously held that to be valid, an action of an agency must conform to its rules which are in effect at the time the action is taken. *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998). More importantly, any violation of the rules and regulations governing the administration of chemical tests calls into doubt the reliability of the results of such tests, especially in light of the evidentiary burdens the department is free from.

In *McPherrin v. Conrad, supra*, we held that the department makes a prima facie case for revocation once they establish the officer provided his or her sworn report containing the required recitations. The burden then shifts to the defendant to prove that one or more of the recitations in the sworn report are false. See, also, *Davis v. Wimes*, 263 Neb. 504, 641 N.W.2d 37 (2002); *Urwiller v. Neth*, 263 Neb. 429, 640 N.W.2d 417 (2002); *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997); *McGuire v. Department of Motor Vehicles*, 253 Neb. 92, 568 N.W.2d 471 (1997); § 60-6,205(7). We adopted this rule aware that in some circumstances, the officer may not have personal

knowledge of every fact stated in the sworn report, such as the reliability or validity of the chemical test procedures. Despite this, we held that the recitations in the sworn report will be taken as true until proved false by the defendant.

The rule expressed in *McPherrin v. Conrad*, 248 Neb. 561, 537 N.W.2d 498 (1995), frees the department of independently investigating the circumstances of each arrest. The department is also free from establishing the foundational elements necessary for the admission of a breath test in a driving under the influence prosecution. See, e.g., *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000). Thus, *McPherrin* conveys a substantial procedural benefit upon the department in an administrative license revocation proceeding. However, given this benefit, the department is expected to strictly comply with the applicable rules and regulations. Where, as in this case, the department violates one of those rules, we believe that concerns are properly raised about whether other aspects of the chemical testing conformed to the rules and regulations. Therefore, we conclude that when the applicable rules and regulations are not strictly complied with, the department cannot obtain the benefit of a presumption that all facts recited in the sworn report are true.

The sworn report received at Morrissey's license revocation hearing recited, inter alia, that Morrissey refused to submit to a chemical test of his breath, blood, or urine. While we determine that this fact may not be presumed to be true, the question now becomes whether the department offered sufficient evidence of Morrissey's refusal, independent of the sworn report.

At Morrissey's license revocation hearing, Randall testified that he transported Morrissey to police headquarters for chemical testing and was present during Morrissey's chemical test. Randall described the administration of the chemical test as follows:

Q Did he — did Mr. Morrissey, did he take the mouth piece into his mouth?

A Yes he did. He refused to blow an adequate sample.

Q Did he offer some air into the instrument? I mean —

A Yes, I believe he did some.

Q Did he, at any point, verbally refuse?

A Yes, he did.

Q What — okay, what happened? Just explain to me what happened.

A For the test, he sat down, Mr. Ingram explained the test, he did put the mouth piece to his mouth, then he got angry. He did — I believe he did blow a small amount at one point, and Mr. Ingram explained he needs to blow long and hard through the tube, and he verbalized that he wasn't going to do it, after a small period of time.

Q And did, at any — after he said he was not going to do it, did he offer any air into the instrument after that point?

A No, he didn't.

Morrissey argues that the district court correctly applied *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996), to the facts of this case to conclude that he submitted to a chemical test of his breath. In *Keys*, a motorist was arrested for driving under the influence of alcohol and was requested to submit to a chemical breath test. During the initial attempt to administer the chemical test, the motorist blew air around the mouthpiece of an Intoxilyzer Model 4011AS. The Intoxilyzer's indicator light did not light up, indicating that no air was entering the machine. The officer administering the test then requested that the motorist again offer a sample of breath into the machine. On this second attempt, the motorist provided a sample of air. The Intoxilyzer registered a digital reading of 0.110 grams of alcohol per 210 liters of breath. However, the sample of breath provided by the motorist was insufficient for the Intoxilyzer to print the result on a test record card. The motorist was cited for refusing to submit to a chemical breath test, and his driver's license was later revoked by the department after an administrative license revocation hearing.

On appeal, we were asked to decide if the motorist had submitted to a chemical breath test as required by Nebraska law under these facts. We noted that "[o]ur [driving under the influence] and administrative license revocation statutes are silent on whether the results of a chemical breath test must be shown on a test record card in order to be legally sufficient, or whether a digital Intoxilyzer reading will suffice." *Id.* at 968, 546 N.W.2d at 822. Because this issue was not addressed by statute

or case law, we looked to the applicable Nebraska Department of Health regulations for guidance. *Id.* After analyzing the applicable rules and regulations at 177 Neb. Admin. Code, ch. 1 (1993), we concluded that

> a motorist who provides a sufficient sample of breath to register a digital reading on an Intoxilyzer, but who does not provide enough breath to cause the machine to print the result on a test record card, has submitted to a breath test as required by Nebraska law in the absence of any statutory or regulatory requirement that the results be printed on a test record card . . . .

*Keys v. Department of Motor Vehicles,* 249 Neb. at 971, 546 N.W.2d at 824.

The department now argues that *Keys* is no longer controlling in light of revisions to 177 Neb. Admin. Code, ch. 1, promulgated subsequent to, and purportedly in response to, *Keys.* The department asserts that under these rules and regulations, Morrissey's failure to provide a sufficient sample of breath constituted a refusal to submit to a chemical test of his breath.

The Department of Health and Human Services Regulation and Licensure defines refusal as *"the failure to provide a sufficient sample of body fluid to complete a blood, breath, or urine test* or the refusal to submit to a chemical test of blood, breath, or urine." 177 Neb. Admin. Code, ch. 1, § 001.19 (1998). (Emphasis supplied.) Section 002.01A states in part: "[An] insufficient sample does not constitute a valid test." "Valid test" is defined as "an analysis performed according to methods approved by The Department of Health and Human Services Regulation and Licensure and by an individual possessing a valid permit." 177 Neb. Admin. Code, ch. 1, § 001.15 (1998).

 Generally, a legislative enactment may properly confer general powers upon an administrative agency and delegate to the agency the power to make rules and regulations concerning the details of the legislative purpose. *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.,* 260 Neb. 905, 620 N.W.2d 90 (2000). Agency regulations, properly adopted and filed with the Secretary of State of Nebraska, have the effect of statutory law. *City of Lincoln v. Central Platte NRD,* 263 Neb. 141, 638 N.W.2d 839 (2002).

The Legislature has conferred power to the Department of Health and Human Services Regulation and Licensure to adopt methods for determining whether chemical tests may be considered valid. Neb. Rev. Stat. § 60-6,201(3) (Reissue 1998). The rules and regulations cited above indicate that a motorist who fails to provide a sufficient sample of breath, regardless of the digital reading produced by that insufficient sample, has refused to submit to a chemical test. Those rules and regulations also indicate that a valid test has not been conducted when an insufficient sample of breath has been provided. In this case, Randall testified that Morrissey offered a "small," but inadequate, sample of breath into the Intoxilyzer. Morrissey was then instructed to repeat the process in order to obtain an adequate sample of breath; however, Morrissey refused, and no adequate sample of breath was ever received from him. Under the above-cited rules and regulations, Morrissey is deemed to have refused to submit to a chemical test. To the extent that it conflicts with these rules and regulations, *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996), is no longer applicable.

## CONCLUSION

Where the department fails to strictly comply with 177 Neb. Admin. Code, ch. 1, it cannot obtain the benefit of a presumption that all facts recited in a sworn report are true. Instead, the department must offer sufficient evidence, independent of the sworn report, to establish that a motorist's driver's license should be revoked. In this case, the department offered sufficient evidence, independent of the sworn report, to establish that Morrissey refused to submit to a chemical test of his breath under the Nebraska Department of Health and Human Services Regulation and Licensure's rules and regulations. These rules and regulations, which have the effect of statutory law, indicate that Morrissey's failure to provide a sufficient sample of breath during a chemical test constitutes a failure to submit to a chemical test. These rules and regulations supersede our decision in *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996), and control the disposition of this case. Thus, the district court erred in reversing the department's order

of revocation. We reverse, and remand with directions to vacate the order reinstating Morrissey's driver's license.

REVERSED AND REMANDED WITH DIRECTIONS.